UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 13, 2019

SEAN F. McAVOY, CLERK

LISA L.,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:19-CV-03086-LRS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 16) and the Defendant's Motion For Summary Judgment (ECF No. 18).

## JURISDICTION

Lisa L., Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on September 15, 2015. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on August 9, 2017, before Administrative Law Judge (ALJ) Keith Allred. Plaintiff testified at the hearing, as did Vocational Expert (VE) Anne Jones. On March 21, 2018, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of her application for SSI benefits, Plaintiff was 43 years old, and at the time of the administrative hearing, she was 45 years old. She has a GED and past relevant work experience as a fast food worker.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) not providing specific, clear and convincing reasons for discrediting Plaintiff's testimony regarding her symptoms and limitations; 2) failing to provide adequate reasons for rejecting the opinions of examining medical source, William Drenguis, M.D.; and 3) failing to evaluate the lay witness testimony of Plaintiff's mother, Cheryl Lint.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(I). If she is not, the decision-maker proceeds to step two, which

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has a "severe" medical impairment,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

that being asthma; 2) Plaintiff's impairment does not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform "light" work, and can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, bend, squat and crouch, but can never crawl; and she cannot tolerate extremes of cold or hazards in the workplace, nor exposure to gases, dust, or pulmonary irritants; and 4) Plaintiff's RFC allows her to perform her past relevant work as a fast food worker and other jobs existing in significant numbers in the national economy, including document preparer, telephone quotation clerk, and charge account clerk at both the "light" and "sedentary" exertional levels. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS/TESTIMONY RE SYMPTOMS AND LIMITATIONS**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014)*; Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

The ALJ noted that Plaintiff had no income during thirteen of the past seventeen years and long before her alleged onset date (September 15, 2015). (AR at pp. 24 and 164). According to the ALJ, Plaintiff's "poor work history does not add significant probative weight to her allegations concerning [her] ability to sustain regular and continuing work now and may suggest a lack of desire to be part of the workforce even before her alleged onset date or the onset of her symptoms." (*Id.*). At the hearing, Plaintiff acknowledged her highest earning year was 2007 when she worked for six months at Dairy Queen/Orange Julius. (AR at p. 42). This job was in Tacoma and Plaintiff thinks she left the job because she moved back to Yakima. (AR at p. 49). She worked a seasonal job sorting fruit at Valley Fruit warehouse in Yakima for two months after her return. (AR at p. 50). Plaintiff testified she did not return to work after that because her asthma became worse, she could not "do chores without having an attack and doing [her] treatments," and she did not think she could hold down a regular job. (AR at p. 51).

Notwithstanding Plaintiff's limited work record, there is no question that more recently, she has developed "severe" asthma as reflected in spirometry results from October 30, 2017. Plaintiff's post-bronchodilator FEV1 was 1.87 liters, 62% of predicted. (AR at p. 605). Phillip Menashe, M.D., commented that this result showed "[m]oderate to severe airflow obstruction with marked bronchial hyperresponsiveness," a "pattern . . . seen in severe asthma." (AR at p. 605).

Spirometry measures how well an individual moves air into and out of her lungs and involves at least three forced expiratory maneuvers during the same test session. A forced expiratory maneuver is a maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of air over time. The volume of air exhaled in the first second of the forced expiratory maneuver is the FEV1. 20 C.F.R. § 404 Subpart P, App. 1, Listing 3.00E 1. The highest FEV1, post-bronchodilator (after inhalation of bronchodilator medication) is used to evaluate the

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

severity of an individual's asthma. At Plaintiff's height of 164 to 169 centimeters, an FEV1 of 1.75 liters, along with exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart, with each hospitalization lasting at least 48 hours (including hours in the emergency department immediately before the hospitalization), meets the listing for asthma and results in a conclusive presumption of disability. Listing 3.03A and B.

As noted by the ALJ, Plaintiff's post-bronchodilator listing was 1.87 liters and she did not have three hospitalizations within a 12-month period lasting at least 48 hours. (AR at p. 19). Plaintiff did, however, have numerous repeated emergency department (ED) visits for asthma exacerbations beginning in February 2015. There were approximately 20 such visits between January 2015 and March 2017.

In January 2015, Plaintiff presented in the Yakima Regional Hospital ED with complaints of breathing difficulty. The symptoms were described as "moderate." Plaintiff claimed she had used her albuterol inhaler six times the previous night, but it did not alleviate her symptoms. (AR at p. 279). In February 2015, Plaintiff walked in to the ED with complaints of breathing difficulty. Plaintiff's symptoms were described as "moderate." (AR at p. 369). On July 11, 2015, Plaintiff presented in the ED with increasing shortness of breath. (AR at p. 346). The shortness of breath was alleviated by prescription medications, the symptoms were described as "moderate," and it was noted that Plaintiff had run out of her albuterol inhaler because her insurance had changed and she was not yet getting her medications. It was also noted that Plaintiff had a steroid inhaler, but was not using that. (AR at p. 348). On July 25, 2015, Plaintiff presented at the ED with wheezing that began without any particular precipitating event. (AR at p. 337). In August 3, 2015, Plaintiff presented to the Toppenish Community Hospital ED with wheezing which occurred gradually over the previous four hours. Her symptoms were described as "moderate, at worst, just prior to her arrival at the ED. (AR at p. 328). The day previous (August 2,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

2015), Plaintiff was seen at Yakima Regional Hospital ED, reporting her asthma was flaring up, regular inhalers were not helping, and she had done a lot of yard work that day and was now unable to control her shortness of breath. (AR at p. 272). Plaintiff's symptoms were "markedly" relieved when albuterol was administered to her. (AR at p. 274). On September 19, 2015, Plaintiff reported feeling shortness of breath which was worse the previous night, but she had used an inhaler that day and was feeling a little bit better. Plaintiff indicated she had a nebulizer, but did not have medicine for it. (AR at p. 311). It was noted that Plaintiff's shortness of breath was aggravated by nothing, alleviated by nebulizer treatment, and at worst, her symptoms were "moderate" in the ED. (AR at p. 313). On October 31, 2015, Plaintiff's symptoms were reported as "moderate" at worst and relieved by albuterol nebulizer treatments. (AR at pp. 304 and 306). Plaintiff returned on November 5, 2015, reporting she was not doing better. (AR at p. 290). At their worst, the symptoms were "mild' in the ED and unchanged despite home interventions. (AR at p. 294).

On January 5, 2016, Plaintiff presented herself to the ED after running out of asthma medicine at home. (AR at p. 410). Plaintiff requested a refill of albuterol. She denied a current asthma attack and indicated she had run out of her inhaler and albuterol nebulizer and had yet to get established with her new clinic. (AR at p. 415). Plaintiff was counseled about the appropriate use of the ED and the need for outpatient follow up with a family practitioner. (AR at p. 417). On February 11, 2016, Plaintiff returned to the ED, stating she had run out of her inhaler and nebulizer that day and that her shortness of breath was getting worse over the course of the day. (AR at p. 396). At their worst, the symptoms were "mild" just prior to arrival. (AR at p. 402). On March 5, 2016, Plaintiff reported shortness of breath and tightness in her chest. She had not engaged in any activity prior to arrival and had used an inhaler. (AR at p. 421). Her symptoms, described as "moderate severe," were alleviated by nebulizer treatment. (AR at pp. 424-25). On March 24, 2016, Plaintiff

presented to the ED with wheezing. At worst, her symptoms were considered "moderate" and alleviated by inhaler albuterol, although it was also noted in all capital letters that Plaintiff "RAN OUT OF THE NEB ALBUTEROL." (AR at p. 436). Plaintiff's symptoms markedly improved after treatment in the ED. (AR at p. 438). On April 8, 2016, Plaintiff arrived at ED with wheezing that began after exposure to animal dander. (AR at p. 448). The symptoms, considered at worst to be "moderate," (AR at p. 448), were markedly relieved by an albuterol nebulizer treatment. (AR at p. 450). On April 20, 2016, Plaintiff reported shortness of breath increasing over the last day, even though she had used "albuterol nebs twice today." (AR at p. 456). It was described as "moderate" shortness of breath. (AR at p. 456). On June 16, 2016, Plaintiff reported she had run out of asthma medication and had started experiencing shortness of breath 15 minutes prior to arrival in the ED. (AR at p. 467). Her symptoms were described as "moderate" at worst and were alleviated by nebulizer treatment. (AR at p. 471). On October 19, 2016, Plaintiff indicated she had used a nebulizer at home, but continued to feel tightness in the chest and shortness of breath. (AR at p. 478). Her symptoms in the ED were described as "mild" at worst and were again alleviated by nebulizer treatment. (AR at p. 481). On November 24, 2016, Plaintiff reported shortness of breath although she had engaged in no activity prior to arrival. (AR at p. 489). Plaintiff's symptoms were considered "moderate" at worst and it was noted she had recently been seen by her primary care provider for bronchitis. (AR at p. 492). On December 13, 2016, Plaintiff's symptoms were described as "severe" and it was noted she had not recently seen a physician. (AR at p. 504). Plaintiff returned to the ED on December 15, 2016, with continued shortness of breath and stated she had been taking the "duo neb," but did "not like the feeling the albuterol gives her." (AR at p. 511). Symptoms were described as "moderate" at worst and it was pointed out that she had stopped using her duo neb at home. (AR at p. 514).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

The assessment on January 29, 2017 was essentially the same as it had been on December 15, 2016. (AR at p. 525). On February 6, 2017, Plaintiff reported shortness of breath once again, although she had not engaged in any type of activity prior to arrival. (AR at p. 533). The symptoms, described as "moderate" at worst, were alleviated by steroids. (AR at p. 537).[1] On February 22, 2017, Plaintiff reported she had taken a duo neb breathing treatment one hour prior to arrival at the ED. (AR at p. 544). Her symptoms were described as "moderate" at worst and it was noted she was "using her nebs with no improvement." (AR at p. 548). On March 6, 2017, Plaintiff indicated she had experienced shortness of breath and wheezing for the last three days and had used her nebulizer at home numerous times today. (AR at p. 558). Due to the wait time, Plaintiff left the ED without being seen by a provider. (AR at p. 561).

As the ALJ noted in his decision, at the majority of Plaintiff's ED visits, her symptoms were deemed "mild" to "moderate" at worst and were relieved by inhaler/nebulizer treatments. (AR at pp. 21-22). The ALJ did not specifically discount Plaintiff's credibility about the severity of her symptoms because of willful "non-compliance" with an inhaler/nebulizer regime, but certainly suggested her asthma symptoms were controllable with regular breathing treatments at home. Some of the ED visits indicate exacerbation of Plaintiff's symptoms was connected to activity (e.g., yard work), otherwise known as "exercise-induced" asthma, whereas other visits indicated the exacerbation of symptoms was not connected to any activity at all.

On September 25, 2017, Plaintiff was seen by William Drenguis, M.D., for a consultative examination. The doctor's "review of records" referred to a single ED

---

[1] Prednisone is a steroid commonly used to calm airway inflammation in asthma. https://www.webmd.com/asthma/guide/prednisone-asthma#1.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

visit by Plaintiff on February 11, 2016, which he described as "a flare of asthma." According to the doctor's report, the Plaintiff had been "off of her medicine because of financial reasons" and "[s]he received bronchodilators by nebulizer and started a prednisone burst and was discharged that day." (AR at p. 584).[2] Dr. Drenguis, however, referred to another more recent ED/ER visit in describing the history of Plaintiff's asthma:

> When she is compliant on her medications, she continues to need help from emergency room visits. Her last ER visit was three months ago, her asthma was flared by smoke from nearby forest fires. She was given a steroid boost and extra nebulizer and was able to go home. Presently, she describes asthma brought on by stress, pulmonary irritants like smoke, exercise, exposure to cold air, and a respiratory tract infection. She is using both of her inhalers on a daily basis. She also has an albuterol nebulizer that she uses twice a day every day and up to six times a day during a flare.

(AR at p. 584).

Plaintiff informed Dr. Drenguis that she was able to attend to all of her daily personal needs. She reported that climbing the steps into her home was not a problem, that she was able to be on her feet for at least 20 minutes at a time, had no difficulty sitting for hours, and was comfortable lifting around 20 pounds. (AR at pp. 584-85). She indicated she was able to do household chores (cooking, dishes, vacuuming, sweeping, laundry and making beds) in 20 minute spurts, stopping because of shortness of breath. (AR at p. 584). Dr. Drenguis's diagnosis was asthma as evidenced by "well-documented visits to the emergency room during acute flares in the last year" with "symptoms . . . brought on by exertion, exposure to cold, pulmonary irritants, and respiratory tract infections." (AR at p. 587). Dr. Drenguis

---

[2] In reviewing the note from that visit, the court fails to see any reference to Plaintiff claiming that it was because of financial reasons that she was off her medication.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

opined that Plaintiff's maximum standing/walking capacity with normal breaks is at least four hours, noting she is limited by her exercise-induced asthma. (AR at p. 587). However, in an accompanying Medical Source Statement Of Ability To Do Work-Related Activities (Physical), he indicated Plaintiff could stand/walk for a maximum of three hours in a work day. (AR at p. 590). He opined there were no limits on Plaintiff's sitting capacity with normal breaks. He opined Plaintiff's maximum lifting/carrying capacity is 20 pounds occasionally and 10 pounds frequently, noting again that she is limited by her exercise-induced asthma. He opined that Plaintiff may occasionally climb steps, stairs, ladders, scaffolds and ropes, and occasionally stoop, crouch, kneel, and crawl. He opined that Plaintiff may occasionally reach overhead and forward.[3] He noted these limitations were due to Plaintiff's exercise-induced asthma. Finally, he opined that Plaintiff was limited by her asthma from working around extremes of temperature, chemicals and dust, fumes and gases. (AR at p. 588).

In arriving at his RFC determination that Plaintiff was capable of performing less than the full range of light work, the ALJ gave significant weight to the opinion of Robert Hander, M.D., a non-examining doctor who provided the "State agency physical assessment." (AR at pp. 23-24). The ALJ gave some weight to Dr.

---

[3] In the accompanying Medical Source Statement Of Ability To Do Work-Related Activities (Physical), Dr. Drenguis checked boxes indicating Plaintiff could "occasionally" engage in "overhead" reaching and "all other" reaching. (AR at p. 593). It appears, however, in checking the box regarding "all other" reaching, he was attempting to be consistent with his report in which he opined there was a limitation on Plaintiff's ability to reach "forward."

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

Drenguis, noting that unlike Dr. Hander who found Plaintiff was capable of standing/walking for six hours of an eight hour workday (AR at p. 73), Dr. Drenguis found Plaintiff was capable of standing/walking for three hours. And while Dr. Hander found no limitations in Plaintiff's ability to push and/or pull (including operation of hand or foot controls) (AR at p. 73), Dr. Drenguis found Plaintiff could only occasionally reach overhead bilaterally and push and pull bilaterally, and could only frequently operate foot controls bilaterally. (AR at p. 24).

The ALJ presented a hypothetical to the VE based on the ALJ's RFC determination, as primarily informed by Dr. Hander's opinion. The VE opined that Plaintiff could perform her past relevant work. (AR at p. 52). The ALJ then asked the VE to assume the Plaintiff was limited to "sedentary" work[4] with the same non-exertional limitations presented in the first hypothetical (never crawl or climb ladders, ropes and scaffolds; occasionally perform other postural activities; cannot tolerate extreme cold or hazards or exposure to dust, gases or other pulmonary irritants). (AR at p. 52). While the VE testified this precluded Plaintiff's past relevant work as a fast

---

[4] "Light" work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and requires a good deal of walking or standing, or involves sitting most of the time with some pushing or pulling of arm or leg controls. 20 C.F.R. §416.967(b).

"Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. It is defined as work which involves sitting, although a certain amount of standing and walking is often necessary. 20 C.F.R. §416.967(a).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

food worker, she also opined there was other work Plaintiff could perform including document preparer, telephone quotation clerk and charge account clerk. (AR at p. 53).

Plaintiff's mother, Cheryl Lint, with whom Plaintiff lives, testified that if her daughter goes to work in the yard, she is out there for 15-20 minutes before she comes in "huffing and puffing" and needs to use her inhaler and her nebulizer. (AR at p. 43). Ms. Lint also testified that sometimes Plaintiff needs to use her nebulizer even when she has not been working in the yard and that she uses it more than once a day. (AR at p. 44).[5]

Plaintiff testified she gets tired after doing dishes for 10-15 minutes and needs to sit down and get a treatment for 15 minutes and then rest awhile after that before she can get up and do anything else. (AR at p. 45).[6] She indicated that wiping down the table and sweeping the floor also can cause her to get out of breath. (*Id.*). Asked whether now that she had a primary doctor, a nebulizer machine, and prescription refills for inhalers, whether she was doing better and could perform a full-time job, Plaintiff responded in the negative, explaining "I still have to use my nebulizer and still get tired out real easily and get my attacks and have to use my nebulizer on a daily basis." (AR at p. 46). According to Plaintiff, she may have to do two nebulizer treatments in a row and says she sometimes needs to do 4-5 treatments in a day. (AR at p. 47). On a bad day, Plaintiff says she cannot do anything. She has treatments,

---

[5] In his decision, the ALJ did not refer to Ms. Lint's testimony. This was error. *Stout v. Commissioner*, 454 F.3d 1050, 1053-54 (9th Cir. 2006). He will have an opportunity to consider her testimony on remand.

[6] Plaintiff's mother testified her daughter can do dishes for 10 minutes before she has to sit down. (AR at p. 43).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

sits on the couch and tries to relax, and reads a bit. She cannot do yard work or the dishes or anything like that. (AR at p. 47).

Dr. Drenguis opined exertional limitations which are consistent with "sedentary" work. All of the exertional and non-exertional limitations opined by him were based on Plaintiff's "exercise-induced asthma." The testimony of Plaintiff and her mother also indicates the primary issue is asthma induced by exercise.

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). . The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ did not give as much weight to the opinion of Dr. Drenguis, asserting the more serious exertional limitations opined by him with regard to standing/walking capacity, and the additional nonexertional limitations opined by him with regard to overhead reaching ability, pushing and pulling ability, and ability to operate foot controls bilaterally, were not supported by the record. This conclusory assertion is not a legitimate reason for the ALJ to discount the opinion of examining Dr. Drenguis in favor of the opinion of non-examining Dr. Hander, particularly when Dr. Hander's

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

assessment was made in March 2016 (AR at p. 76), whereas Dr. Drenguis offered his September 2017 opinion based on a more recent ED visit and his opinion is supported by the pulmonary function test Plaintiff underwent shortly thereafter (October 2017). The record supports the limitations opined by Dr. Drenguis. While the ALJ presented a hypothetical to the VE asking him to assume the Plaintiff was limited to "sedentary" work (as effectively opined by Dr. Drenguis), he did not ask the VE to consider the additional nonexertional limitations opined by him with regard to overhead reaching ability, pushing and pulling ability, and ability to operate foot controls bilaterally. These limitations will need to be presented to a VE on remand.[7]

The testimony of Plaintiff and her mother is largely not at odds with the limitations opined by Dr. Drenguis that Plaintiff's limitations are the result of "exercise-induced" asthma. Therefore, it is possible Plaintiff is capable of performing a "sedentary" job involving a minimal amount of exercise unlikely to induce an asthma attack. There is, however, also the issue of how often Plaintiff would need to use a nebulizer in the workplace.[8]

---

[7] Dr. Drenguis opined that Plaintiff should never be exposed to extreme heat or humidity and wetness. (AR at p. 593). To the extent these are material to the inquiry about what type of "sedentary" work Plaintiff might be capable of performing, they should also be presented to the VE on remand.

[8] There does not appear to be any issue about the ability to use an inhaler in the workplace as necessary. Inhalers are small, handheld devices that deliver a puff of medicine into the airways. Nebulizers are electric or battery-powered machines that change liquid medicine into a mist which is inhaled into the lungs.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

Plaintiff's limited work history, with virtually no work after 2008, would normally be of potential significance. Although Plaintiff told Dr. Drenguis she had multiple hospitalizations for asthma, but none within the previous ten years (AR at p. 584), there is nothing in the record, as noted by the ALJ, to corroborate such hospitalizations or that Plaintiff's asthma is the reason for her limited work history. As noted above, however, the issue is Plaintiff's ability to engage in substantial gainful activity on or after September 15, 2015. Therefore, Plaintiff's limited work history prior to that date is not a clear and convincing reason to discount her testimony about the severity of her symptoms and resulting limitations. That said, the vast majority of Plaintiff's ED visits show mild to moderate symptoms at worst, relieved by nebulizer treatments in the ED. And there was more than one instance where Plaintiff's visit to the ED was prompted by the fact she had run out of medication at home. This raises a legitimate question whether Plaintiff, on a regular medication regime at home and in a workplace, would be unable to perform certain types of sedentary work. Plaintiff testified she has suffered asthma attacks which were so bad that she passed out while waiting for the ambulance (AR at p. 46), but as the ALJ noted, there are no records to corroborate her claim. (AR at p. 23). As the ALJ also observed, although Plaintiff and/or her mother alleged Plaintiff's symptoms have been so severe on occasion that she could not speak or catch her breath, none

---

Medicine is measured out into a cup which is then attached with tubing to the machine. The machine is turned on and the individual breathes in the mist through a mouthpiece or mask. It usually take 20 minutes or less to inhale the medicine. Nebulizers are not as easily portable as inhalers.

https://www.webmd.com/lung/copd/how-copd-devices-work#3

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 17**

of the ED visits indicate her complaining of symptoms that severe. (AR at p. 23). These may be clear and convincing reasons to discount the severity of the symptoms and limitations alleged by Plaintiff, including when and how often she needs to use a nebulizer. Likewise, these may be germane reasons to discount the testimony of Plaintiff's mother regarding the severity of her daughter's symptoms and the resulting limitations.

The ALJ asked the VE about an individual's need to use a nebulizer in the workplace. The VE testified it depended on whether the individual could use it on a regularly scheduled break or at lunch, or whether he/she needed to use it at other times that would take him/her off task. The VE indicated that using the nebulizer at times other than breaks could present a problem for jobs such as telephone quotation clerk and charge account clerk, considering the individual would be unable to speak and would be using one hand to hold the nebulizer face mask. On the other hand, the VE suggested it might not be a problem with regard to the document preparer job which does not involve contact with the general public. (AR at pp. 54-55).

In his decision, the ALJ referred to the VE's testimony as follows:

> The [VE] . . . testified that the need to use a nebulizer once or twice a day in the workplace would not affect her ability to work. These uses are instantaneous and can be performed on breaks and during the lunch hour. Having observed people using nebulizers in open society, I find it to be common knowledge that these can be used quickly at the work station without affecting her ability to work.

(AR at p. 26). The court is not persuaded it is "common knowledge" that nebulizers can be used quickly at a work station without affecting ability to work. On remand, evidence should be developed and placed in the record regarding what is involved in using a nebulizer and how long it typically takes to use one to administer a treatment. Testimony should also be taken from the Plaintiff regarding how long it takes her to use a nebulizer. The VE will consider this evidence in determining how it impacts an individual's ability to perform "sedentary" jobs existing in significant numbers in

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 18**

the national economy.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id.*, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id.* at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id.*, quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied-

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 19**

ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

While the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Drenguis, it is unclear at this juncture whether he failed to provide legally sufficient reasons for discounting Plaintiff's testimony about the severity of her symptoms and resulting limitations. As discussed above, there are outstanding issues that must be resolved before a determination of disability can be made. Further administrative proceedings would be useful to address these issues. The court exercises its discretion to remand for additional evidence.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 16) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 18) is **DENIED**.

Pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and close this file.

**DATED** this ___13th___ day of December, 2019.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 20**